IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAPPHIRE GAS SOLUTIONS, LLC | § § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 4:25-CV-04029 |
| v. | § § | |
| SOUTHERN PINES TRUCKING, INC. | § § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF SAPPHIRE GAS SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT & REQUEST FOR DECLARATORY JUDGMENT

Plaintiff Sapphire Gas Solutions, LLC ("Sapphire") files this First Amended Complaint and Request for Declaratory Judgment against Defendant Southern Pines Trucking, Inc. ("Southern Pines").

## I.     Introduction

1.     On September 22, 2023, a Southern Pines truck driver delivered a load of liquid natural gas ("LNG") to an LNG facility and associated project site in Toppenish, Washington (the "Site" or "Toppenish Site").  At the Site, after his transport trailer was connected to a storage tank to transfer LNG through a transfer hose, the Southern Pines driver unexpectedly and without warning drove his truck forward while the hose remained connected and LNG was actively being transferred.  The driver's actions disconnected the transfer hose and caused a sudden, uncontrolled release of LNG at the Site that ignited and, tragically, caused the death of a Sapphire employee (and damage to property at the Site) (collectively, the "Incident" or "Toppenish Incident").

1

2.     In the ensuing years, Southern Pines has repeatedly refused to accept any responsibility for the Incident or the damages caused by the Incident.  Southern Pines was operating at the Site pursuant to an agreement with Sapphire that, among other things, requires Southern Pines to fully and completely defend and indemnify Sapphire from and against any and all losses, damages, or claims of any kind "arising from or incidental to" Southern Pines's work at the Site.  Sapphire has repeatedly demanded that Southern Pines honor that agreement and defend and indemnify Sapphire.  Despite its clear obligations, Southern Pines refuses to do so.

3.     Sapphire brings this lawsuit to recover the losses it has suffered as a result of the Incident, Southern Pines's breach of its agreement with Sapphire, and Southern Pines's refusal to honor its contractual defense and indemnification obligations.

## II.     Parties

4.     Plaintiff Sapphire Gas Solutions, LLC is a Delaware limited liability company with its principal place of business in Montgomery County, Texas.

5.     Defendant Southern Pines Trucking, Inc. is Pennsylvania corporation with its principal place of business in Beaver County, Pennsylvania. Southern Pines has previously been served, appeared, and removed this lawsuit to federal court.

## III.     Jurisdiction and Venue

6.     The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Southern Pines is a citizen of Pennsylvania, Sapphire's members are not citizens of Pennsylvania, and the amount in controversy exceeds $75,000, excluding interest and costs.

7.    The Court has personal jurisdiction over Southern Pines—and venue is proper in this District—because the claims in this lawsuit relate in part to a Master Transportation Agreement in which Southern Pines consented to the exclusive jurisdiction of the federal and state courts located in Harris County, Texas:

> **6.5 Jurisdiction and Venue Selection.** The Parties agree that venue for any judicial proceeding will be proper in Harris County, State of Texas, United States of America. The Parties hereby irrevocably submit to the exclusive jurisdiction of the federal and state courts located in Harris County, Texas for the resolution of any Claim under this Agreement, and each Party agrees not to assert any defense to any Claim initiated by the other within Harris County based upon improper venue or inconvenient forum.

Master Transportation Agreement § 6.5.

8.    The Court also has personal jurisdiction over Southern Pines by virtue of Southern Pines transacting business in and/or directed at Texas and purposefully availing itself of the benefits and privileges of Texas law by regular, continuous, and systematic contacts with Texas.

9.    Southern Pines previously entered an appearance in this matter without contesting personal jurisdiction.

10.    This action is brought in part pursuant to 28 U.S.C. §§ 2201 and 2202 of the Federal Declaratory Judgment Act and Federal Rule of Civil Procedure 57.

### IV.    Factual Background

**A.    The Master Transportation Agreement Requires Southern Pines to Perform at the Highest Industry Standards and to Broadly Indemnify Sapphire.**

11.    Sapphire is a specialized transportation company that transports and dispenses natural gas products throughout the United States. Sapphire specializes in

3

pipeline integrity management, mobile natural gas solutions, and renewable energy support.

12.    Southern Pines is a Pennsylvania-based motor carrier that hauls freight and cargo materials, including LNG, across the United States.

13.    Sapphire and Southern Pines are parties to a Master Transportation Agreement dated April 6, 2021 (the "MTA"). A copy of the MTA was attached as Exhibit A to Sapphire's Original Petition and is located at ECF Doc. 1-3 in this case.

14.    The MTA contains various terms and conditions that speak for themselves, including, without limitation, provisions pertaining to providing transportation services, as well as loading and unloading LNG shipments. For example, in the MTA, Southern Pines agreed to: perform its transportation services "consistent with the highest industry standards as to safety and efficiency" (MTA § 1.4); employ or use only competent, able, trained, experienced, and properly licensed personnel (*Id.* §§ 3.13.3, 3.13.6); comply with all applicable law (*Id.* § 4.2); be "fully responsible and liable for the acts and omissions of any person it employs or hires to perform any portion of the services" (*Id.* § 3.18); and "be solely responsible for properly and safely directing, placing, securing, and transporting" shipments made pursuant to the MTA (*Id.* § 4.4.3).

15.    Southern Pines also committed in the MTA to indemnify, defend, and hold harmless Sapphire in multiple, unambiguous provisions. For example, Southern Pines broadly agreed to defend, indemnify, and hold harmless Sapphire from and against any and all "CLAIMS . . . ARISING FROM OR INCIDENTAL TO" Southern Pines's performance under the MTA. *Id.* § 4.5. Southern Pines further agreed that Sapphire "shall not be liable for

4

any enforcement action taken, or fines or penalties assessed by a governmental agency or other entity . . . due to [Southern Pines's] non-compliance with Applicable Law" and to indemnify, defend, and hold harmless Sapphire against any and all claims asserted due to Southern Pines's non-compliance. *Id.* § 4.2.

**B.    The Toppenish Incident Occurred When the Southern Pines Driver Prematurely Pulled Away While LNG Was Being Transferred.**

16.    Cascade Natural Gas Corporation ("Cascade") is a natural gas utility provider that operates a natural gas facility and associated project site at the Site in Toppenish, Washington. Cascade contracted with Sapphire to provide LNG as a substitute supply of natural gas to Cascade's pipeline at the Toppenish Site under a Master Service Agreement dated July 1, 2022.

17.    In particular, Cascade retained Sapphire to provide a supply of odorized natural gas by delivery of LNG to the Toppenish Site using cryogenic transport tanker trailers and accompanying vaporizer trailers. Upon arrival at the Site, the LNG was transferred through a hose into an on-site "queen" storage trailer, where it was vaporized, odorized, and injected into Cascade's pipeline. This process enabled Cascade to maintain uninterrupted service to its customers.

18.    Pursuant to the MTA, Sapphire subcontracted with Southern Pines to transport and deliver the LNG to the Toppenish Site for offloading into a "queen" storage trailer.

19.    On September 22, 2023, Sapphire personnel and equipment were staged at the Toppenish Site when a Southern Pines truck driver arrived to deliver LNG for

offloading. The Southern Pines driver's transport trailer was connected to a queen storage trailer using a transfer hose. During the offloading process, the driver unexpectedly drove his transport trailer forward while the hose remained connected and LNG was still being transferred. This movement caused a sudden disconnection at the queen storage trailer's intake coupling, resulting in the release of LNG, which subsequently ignited and caused a fire. A Sapphire technician, Earnest Barnett ("Barnett"), sustained injuries from the release and fire and tragically passed away from his injuries.

20.     The fire also caused significant property damage to Sapphire's equipment located at the Site. The destroyed and damaged equipment included a Sapphire truck, two destroyed vaporizer trailers, as well as damage to a queen cryo-trailer which incurred repair costs.

## C.     Sapphire Has Incurred Costs Resulting from Multiple Demands, Lawsuits, and Enforcement Actions Arising from the Incident.

21.     The Toppenish Incident has resulted in multiple demands, lawsuits, and enforcement actions brought against Sapphire, each of which has arisen from or been incidental to Southern Pines's performance under the MTA and each of which has required Sapphire to incur costs out of its own pocket.

22.     For example, on December 7, 2023, Mr. Barnett's surviving spouse filed a wrongful death lawsuit against Sapphire on behalf of herself and on behalf of Mr. Barnett's Estate in the District Court of Dallas County, Texas (the "First Barnett Lawsuit"). Sapphire retained counsel, transferred the suit to Montgomery County, and obtained the plaintiffs' voluntary dismissal without prejudice.

23.    On February 22, 2024, Cascade demanded that Sapphire compensate Cascade for expenses that Cascade claimed it incurred in responding to service interruptions allegedly caused by the Incident (the "First Cascade Demand"). Cascade claimed that the service interruptions were caused by the interruption in national gas services resulting from the Incident. Sapphire retained counsel and incurred costs in responding to that demand.

24.    On March 29, 2024, Ryan Parkhurst—the Southern Pines driver who drove his transport trailer forward while the hose remained connected and LNG was still being transferred during the Incident—made a demand on Sapphire for damages he claims resulted from the Incident (the "Parkhurst Demand"). Sapphire retained counsel and incurred costs in responding to the Parkhurst Demand.

25.    On March 27, 2025, the Washington Utilities and Transportation Commission (the "UTC") initiated an enforcement action against Cascade in connection with the Toppenish Incident (the "UTC Action"). Cascade demanded Sapphire indemnify, hold harmless, and defend Cascade pursuant to the Master Service Agreement between Cascade and Sapphire (together with the First Cascade Demand and all other demands from Cascade, the "Cascade Demands") for the UTC Action and additional response costs Cascade alleges to have incurred. To protect its interests, Sapphire retained counsel and intervened in the UTC Action.

26.    On August 22, 2025, Mr. Barnett's Estate filed another wrongful death lawsuit against Cascade, Sapphire, and Southern Pines in Snohomish County, Washington

(the "Second Barnett Lawsuit"). Cascade has demanded that Sapphire defend and indemnify it from the Second Barnett Lawsuit.

27.     Sapphire has incurred—and continues to incur—damages, attorneys' fees, costs, and expenses associated with responding to the Incident and the foregoing actions, including the UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit.

**D.     Southern Pines Has Repeatedly Rejected Its Indemnification Obligations.**

28.     Sapphire has repeatedly demanded that Southern Pines honor its defense, indemnification, and hold harmless obligations under the MTA. Southern Pines has consistently refused.

29.     On July 10, 2024, Sapphire wrote to Southern Pines demanding that Southern Pines provide a defense and indemnification under the MTA.  That demand specifically referenced the First Cascade Demand, the Parkhurst Demand, and the First Barnett Lawsuit. Southern Pines responded to that demand by rejecting it in full.

30.     On August 2, 2024, Sapphire again wrote to Southern Pines, supplementing its prior demand and demanding that Southern Pines make a claim on its insurance carrier for additional insured coverage. Southern Pines again continued to reject its obligations.

31.     On May 8, 2025, and again on July 23, 2025, Sapphire again supplemented its defense and indemnity demand on Southern Pines, specifically referencing the UTC Action. On August 15, 2025, Southern Pines responded in writing again rejecting Sapphire's demand.

32.     Despite the unambiguous language of the MTA—and that the Toppenish Incident arises from and is incidental to Southern Pines's performance under the MTA—Southern Pines has continued to refuse Sapphire's demands for defense and indemnification.

## V.     Claims for Relief

**A.     Count I—Request for Declaratory Judgment (MTA Section 4.5)**

33.     Sapphire incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

34.     Section 4.5 of the MTA obligates Southern Pines (as "Carrier") to defend, indemnify, and hold harmless Sapphire (as "Company") from and against "ANY AND ALL CLAIMS . . . ARISING FROM OR INCIDENTAL TO" Southern Pines's performance under the MTA:

> **4.5     INDEMNIFICATION.** CARRIER AGREES TO RELEASE, INDEMNIFY, DEFEND, AND HOLD HARMLESS COMPANY FROM AND AGAINST ANY AND ALL CLAIMS, INCLUDING, BUT NOT LIMITED TO, PERSONAL INJURY OR DEATH OF ANY MEMBER OF CARRIER GROUP OR THIRD PARTY, OR ANY LOSS OF OR DAMAGE TO ANY PROPERTY (INCLUDING ANY DAMAGE TO ANY SHIPMENT OR ANY OTHER PROPERTY OF COMPANY), ARISING FROM OR INCIDENTAL TO CARRIER GROUP'S PERFORMANCE UNDER THIS AGREEMENT, EXCEPT TO THE EXTENT CAUSED BY COMPANY'S NEGLIGENCE OR WILLFUL MISCONDUCT. . . .

MTA § 4.5. The only narrow exception, which is inapplicable here, is for claims "to the extent caused by" Sapphire's negligence or willful misconduct.

35.     The MTA broadly defines "Claims" to include:

> [A]ny and all losses, expenses, costs, charges, damages, liabilities, claims, demands, liens, causes of action, suits, judgments, settlements, regulatory

proceedings, citations, orders, decrees, and taxes, of any nature, kind, or description (including, without limitation, reasonable attorney fees, court costs, litigation and settlement costs, fines, penalties, interest, cleanup, remediation, debris removal, and well control) that may be brought or asserted against a person or entity by any person or entity.

*Id.* § 2.6.

36.     The demands, lawsuits, and enforcement actions described in Section IV above, including the UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit, fit squarely within the MTA's definition of "Claims," which expressly includes "regulatory proceedings," "demands," and "suits."

37.     Likewise, the damages, costs, losses, attorneys' fees, and expenses that Sapphire has incurred, and will continue to incur, in connection with the Toppenish Incident—including but not limited to those arising from responding to the Incident, the UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit—also constitute "Claims" under the MTA.

38.     Under Section 4.5 of the MTA, Southern Pines has a contractual duty to defend and indemnify Sapphire for all "Claims" that "aris[e] from" or are "incidental to" Southern Pines's performance under the MTA. The foregoing "Claims" unquestionably "arise from," and are at the very least "incidental to" Southern Pines's performance under the MTA, as each of those claims arises from the Toppenish Incident, which occurred while Southern Pines was providing transportation services to Sapphire under the MTA.

39.     Accordingly, the damages, costs, losses, attorneys' fees, and expenses that Sapphire has incurred, and will continue to incur, in connection with the Toppenish Incident—including but not limited to those arising from responding to the Incident,

the UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit—unequivocally trigger Southern Pines's defense, hold harmless, and indemnity obligations under Section 4.5 of the MTA.

40.     Southern Pines has wrongly asserted that the foregoing Claims do not trigger its defense, hold harmless, and indemnity obligations under Section 4.5.

41.     Sapphire therefore requests a declaratory judgment against Southern Pines declaring that, under Section 4.5 of the MTA, Southern Pines must defend, hold harmless, and indemnify Sapphire for all claims, damages, costs, losses, attorneys' fees, and expenses that Sapphire has incurred, or will incur in the future, in connection with the Toppenish Incident—including but not limited to those arising from responding to the Incident, the UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit.

**B.     Count II—Request for Declaratory Judgment (MTA Section 4.2)**

42.     Sapphire incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

43.     Under Section 4.2 of the MTA, Southern Pines agreed and warranted that its work would comply with all applicable law and that if its work did not, it would indemnify, defend, and hold harmless Southern Pines:

> **4.2 Compliance with Applicable Law.** Carrier warrants and represents that, in conjunction with its performance under this Agreement, it will comply with all Applicable Law and no Applicable Law has been violated in supplying Company the Services. Company shall not be liable for any enforcement action taken, or fines or penalties assessed by a governmental agency or other entity in connection with any Shipment subject to this Agreement due to Carrier Group's non-compliance with

11

Applicable Law. Carrier agrees to indemnify, defend and hold Company harmless against any and all Claims which Carrier may incur by reason of any such non-compliance. Any provision of this Agreement excluding liability for Consequential Damages or limiting Carrier's liability in any way shall not apply to any Breach of this warranty.

*Id.* § 4.2.

44.     Pursuant to the above, Southern Pines agreed that Sapphire would not be liable for any "Claims," specifically including enforcement actions, fines, or penalties assessed by a governmental agency due to Southern Pines's non-compliance with applicable law.[1]

45.     Southern Pines failed to comply with applicable law when its driver drove his truck away while the trailer was still connected and offloading LNG. The claims, damages, costs, losses, attorneys' fees, and expenses described above are the direct result of Southern Pines's non-compliance with applicable law, including the UTC Action, which directly involves "fines or penalties assessed by a governmental agency"—the Washington Utilities and Transportation Commission. Southern Pines is responsible for all of those claims under Section 4.2 of the MTA.

46.     Sapphire therefore requests a declaratory judgment against Southern Pines declaring that, under Section 4.2 of the MTA, Southern Pines is required to indemnify, defend, and hold harmless Sapphire for all claims, damages, costs, losses, attorneys' fees, and expenses that Sapphire has incurred, or will incur in the future, in connection with the

---

[1] The MTA defines "Applicable Law" broadly to include "any law, statute, rule, regulation, order, or ordinance of the United States, or any state, municipality, or political subdivision thereof, where any Services are provided hereunder[.]" *Id.* § 2.2.

12

Toppenish Incident, UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit.

## C.    Count III—Breach of Contract

47.    Sapphire incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

48.    Sapphire and Southern Pines are parties to a valid and enforceable contract, the MTA.

49.    Sapphire has fully performed all its obligations under the MTA.

50.    As described in more detail in Count I, under Section 4.5 of the MTA, Southern Pines is contractually obligated to defend, hold harmless, and indemnify Sapphire for all Claims arising from or incidental to Southern Pines's performance under the MTA. Southern Pines has materially breached the MTA by refusing to defend, hold harmless, or indemnify Sapphire for all claims, damages, costs, losses, attorneys' fees, and expenses associated with the Toppenish Incident, including responding to the Incident, the UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit.

51.    As described in more detail in Count II, under Section 4.2 of the MTA, Southern Pines is contractually obligated to defend, hold harmless, and indemnify Sapphire for all Claims that result from Southern Pines' non-compliance with applicable law. Southern Pines has materially breached the MTA by refusing to indemnify, defend, and hold harmless Sapphire for all claims, damages, costs, losses, attorneys' fees, and expenses associated with the Toppenish Incident, including responding to the Incident, the

UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit.

52.    Under Section 1.4 of the MTA, Southern Pines agreed to perform its transportation services for Sapphire "consistent with the highest industry standards as to safety and efficiency." MTA § 1.4. Southern Pines materially breached the MTA by failing to safely perform its services, in accordance with "the highest industry standards," when its driver pulled his truck away while the trailer was still connected and offloading LNG at the Toppenish Site.

53.    Under Section 3.13.6 of the MTA, Southern Pines agreed to employ or use in the performance of its services or operation of the equipment only competent, able, trained, experienced, and properly licensed personnel. *Id.* § 3.13.6. Southern Pines materially breached the MTA by failing to use competent, able, trained, experienced, and/or properly licensed personnel during the performance of its services and operation of the equipment at issue.

54.    Under Section 3.18 of the MTA, Southern Pines agreed to be "fully responsible and liable for the acts and omissions of any person it employs or hires to perform any portion of the services." *Id.* § 3.18. The Toppenish Incident occurred when a Southern Pines employee pulled his truck away while the transfer hose was still connected to the queen storage trailer. Sapphire has made written demands on Southern Pines to honor its contractual obligations, and Southern Pines has refused to acknowledge its contractual duties and has rejected Sapphire's demands. Accordingly, Southern Pines has

14

materially breached the MTA by failing to accept responsibility for the acts of its employee and refusing to reimburse Sapphire for its associated damages.

55.    Under Section 4.4.3 of the MTA, Southern Pines agreed to be solely responsible for properly and safely directing, placing, securing, and transporting" the shipments made under the MTA. *Id.* § 4.4.3. Southern Pines failed to properly and safely direct, place, secure, and transport the shipment when its driver pulled his truck away while the LNG shipment was still being offloaded at the Site. Accordingly, Southern Pines materially breached the MTA.

56.    Southern Pines's breaches described herein proximately caused Sapphire to suffer damages in the form of response costs, debris removal costs, equipment repair and replacement costs, attorneys' fees, expenses, and other monetary expenditures and liabilities incurred in connection with the Toppenish Incident, including without limitation the UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit. Sapphire continues to incur such damages as a result of Southern Pines's ongoing breaches of the MTA.

**D.    Count IV—Negligence**

57.    Sapphire incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

58.    Pleading in the alternative, and without waiver of the foregoing claims, Sapphire alleges that Southern Pines was negligent.

59.    Southern Pines owed Sapphire a duty to exercise reasonably prudent and ordinary care in the performance of its services. Through the acts of its agents, employees,

and/or representatives, Southern Pines breached this duty by failing to act as a reasonably prudent company would have under the same or similar circumstances. Southern Pines's negligent acts or omissions include, but are not limited to:

    a. Failing to safely perform the services for which it was contracted to perform;

    b. Performing the work in a manner that caused the fire at the Site;

    c. Failing to use competent, able, trained, experienced, and/or properly licensed personnel;

    d. Failing to adequately ensure that the transfer hose was disconnected from the queen storage trailer before moving the transfer trailer; and

    e. Otherwise failing to use due care under the circumstances that may be discovered in this lawsuit.

60. Each of the above-referenced acts and omissions, singularly or in combination with others, constituted negligence, which proximately caused the damages suffered by Sapphire.

### E.   Count V—Breach of Express Warranties

61. Sapphire incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

62. Pleading in the alternative, and without waiver of the foregoing claims, Sapphire alleges that Southern Pines breached express warranties.

63. Under the MTA, Southern Pines made a number of express warranties, including that it would employ or use in the performance of its services or operation of

16

the equipment only competent, able, trained, experienced, and properly licensed personnel (*Id.* § 3.13.6), that it would "comply with all Applicable Law" (*Id.* § 4.2), that it would perform its services "consistent with the highest industry standards as to safety and efficiency" (*Id.* § 1.4), that it would be "fully responsible and liable for the acts and omissions of any person it employs or hires to perform any portion of the services" (*Id.* § 3.18), and that it would "be solely responsible for properly and safely directing, placing, securing, and transporting" shipments made pursuant to the MTA (*Id.* § 4.4.3)..

64.    As a result of Southern Pines's acts and/or omissions—described in more detail above—Southern Pines breached its express warranties to Sapphire. Southern Pines's breaches of its express warranties proximately caused the damages suffered by Sapphire.

## VI.    <u>Attorneys' Fees</u>

65.    Section 6.6 of the MTA provides that, in the event a party files suit to enforce its rights or the other party's obligations arising from or incidental to the MTA, the prevailing party shall be entitled to recover its reasonable attorneys' fees and court costs:

> **6.6. Attorneys' Fees.** In the event that either party institutes suit to enforce any right or obligation against the other Party arising from or incidental to this Agreement, the prevailing Party shall be entitled to recovery of its reasonable attorneys' fees and court costs.

*Id.* § 6.6.

66.    Pursuant to Section 6.6, Sapphire seeks to recover all its attorneys' fees and court costs incurred in bringing this suit to enforce its rights and Southern Pines's obligations under the MTA.

67.    Sapphire also is entitled to recover its reasonable and necessary attorneys' fees and costs under Chapter 38 of the Texas Civil Practice and Remedies Code because this suit is for breach of a written contract.

## VII.    Jury Demand

68.    Sapphire previously demanded a jury trial and tendered the appropriate fee with its filing.

## VIII.    For the Court's Eyes Only

69.    Sapphire hereby gives notice to the Court and all parties concerned that various Underwriters issued a policy of insurance which insured Sapphire, and which insured a portion of the loss which forms the basis of this lawsuit. Pursuant to the insurance policy, at the time of filing this lawsuit, Underwriters have made payments on the loss. Pursuant to their subrogation rights under the insurance policy, Underwriters are partially subrogated to Sapphire's claims and real parties in interest to some aspects of the litigation. Underwriters have brought this lawsuit along with their insured, Sapphire, and Sapphire's claims are not applicable to the insurance policy at issue.

## IX.    Request for Relief

For the foregoing reasons, Plaintiff Sapphire Gas Solutions, LLC respectfully requests that it have and recover against Defendant Southern Pines, LLC the following relief in this action:

a. A declaratory judgment in favor of Sapphire declaring that, under Section 4.5 of the MTA, Southern Pines must defend, hold harmless, and indemnify Sapphire for all claims, damages, costs, losses, attorneys' fees, and expenses that Sapphire

has incurred, or will incur in the future, in connection with the Toppenish Incident—including but not limited to those arising from responding to the Incident, the UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit.

b. A declaratory judgment in favor of Sapphire declaring that, under Section 4.2 of the MTA, Southern Pines must defend, hold harmless, and indemnify Sapphire for all claims, damages, costs, losses, attorneys' fees, and expenses that Sapphire has incurred, or will incur in the future, in connection with the Toppenish Incident—including but not limited to those arising from responding to the Incident, the UTC Action, Cascade Demands, Parkhurst Demand, First Barnett Lawsuit, and Second Barnett Lawsuit.

c. All actual and monetary damages, including consequential damages caused, by Southern Pines's breach of contract;

d. All actual and monetary damages caused by Southern Pines's negligence;

e. All actual and monetary damages caused by Southern Pines's breach of express warranties;

f. All attorneys' fees, court costs, and expenses under section 6.6 of the MTA and Texas Civil Practice & Remedies Code § 38.001;

g. Pre-judgment and post-judgment interest as allowed by law; and

h. Any and all other and further relief to which Sapphire may be entitled at law or in equity.

Respectfully submitted,

VINSON & ELKINS, LLP

*/s/ Matthew C. Hoffman*
Matthew C. Hoffman
Texas Bar No. 24068697
Federal ID No. 2422946
mhoffman@velaw.com
Mitchell R. Austin
Texas Bar No. 24116051
Federal ID No. 3691079
maustin@velaw.com
Jacqueline Edmonds
Texas Bar No. 24144217
Federal ID No. 3929814
jedmonds@velaw.com
Vinson & Elkins LLP
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Telephone: (713) 758-2222
Facsimile: (713) 758-2346

HALL MAINES LUGRIN, P.C.

*/s/ M. Matt Jett*
M. Matt Jett
Texas Bar No. 24068684
Federal ID No. 1091771
Samuel J. Saldivar
Texas Bar No. 24110321
Federal ID No. 3846491
Caroline E. Bossier
Texas Bar No. 24110669
Federal ID No. 3557698
Hall Maines Lugrin, P.C.
2800 Post Oak Avenue, Suite 6400
Houston, Texas 77056
Phone: 713-871-9000
Fax: 713-871-8962
mjett@hallmaineslugrin.com
ssaldivar@hallmaineslugrin.com
cbossier@hallmaineslugrin.com

***Attorneys for Plaintiff Sapphire Gas Solutions, LLC***

## **Certificate of Service**

I certify that on November 12, 2025, this document was filed electronically with the Clerk of Court via CM/ECF system. Notice of Electronic Case Filing has been sent automatically to all counsel on the e-mail service list.

Trey B.G. Sandoval III
State Bar No. 24048784
S.D. Tex. ID 615358
treysandoval@mehaffyweber.com
Tori E. Weston
State Bar No. 24144774
S.D. Tex. ID 3909055
tweston@mehaffyweber.com
MehaffyWeber, PC
One Allen Center
500 Dallas, Ste. 2800
Houston, Texas 77002
(713) 655-1200 (Telephone)
(713) 655-0222 (Facsimile)

***Attorneys for Defendant Southern Pines Trucking, Inc.***

*/s/ Mitchell R. Austin*
Mitchell R. Austin